**Don H. ROHRER, Director of Administration**

v.

**B. Albert FORD et al.**

No. 78–331–M.P.

Supreme Court of Rhode Island.

Feb. 10, 1981.

Dennis J. Roberts, II, Atty. Gen., Perry Shatkin, Chief Legal Officer (Taxation), Providence, for petitioner.

Joseph A. Doorley, Jr., Peace Dale, for respondents.

OPINION

KELLEHER, Justice.

We have issued our writ of certiorari pursuant to the relevant portions of the Administrative Procedures Act (APA), specifically, G.L.1956 (1977 Reenactment) § 42–35–16, in order that we may review a judgment entered in the Superior Court holding that the Director of Administration (the director) lacked standing to seek judicial review of an order of the state's Personnel Appeal Board (the board).

The facts are undisputed. On March 28, 1976, respondent Rosalie Falvey (Rosalie) was hired by the Department of Administration's Tax Division and placed in the classified service as a revenue officer. Less than three months later, the tax administrator notified Rosalie, who was a probationary employee, that her employment was being terminated as of June 11, 1976, "for the good of the service." Rosalie appealed this action to the board. The board acknowledged that an employee such as Rosalie could be dismissed at any time during the probationary period but ordered her reinstatement because it believed that Rosalie had not been afforded a sufficient opportunity to prove her ability to do the job.

The director then filed an appeal in the Superior Court. In a written decision the trial justice, after referring to various portions of the state's Merit System Act (G.L. 1956 [1969 Reenactment] chapters 3 and 4 of title 36), dismissed the director's appeal on the basis that he lacked standing. According to the trial justice, the director was not aggrieved. In finding no aggrievement, the trial justice employed the standard enunciated in *New England Telephone & Telegraph Co. v. Fascio*, 105 R.I. 711, 254 A.2d 758 (1969), where we said that aggrievement results from an order, decision,

or decree that "adversely affects in a substantial manner some personal or property right" of the appellant.

An examination of G.L.1956 (1969 Reenactment) § 36–3–10 (1979 Cum.Supp.) reveals that at the time of Rosalie's appeal the board was authorized to hear three types of appeal, two of which concerned only those state employees who were part of the classified service. The classified employee could have appealed any action taken by the director in personnel matters as well as any action by the appointing authority which resulted in the employee's discharge, demotion, suspension, or layoff. The board was also required to consider appeals taken by "any person" who believed that certain action taken by the personnel authorities was based upon the person's race, sex, age, physical handicap, or religious or political beliefs. In its pertinent portions, § 36–4–42 (1980 Cum.Supp.) requires the board to render a decision within thirty days after the conclusion of its hearing and specifies:

"The decision of the board shall be final and binding upon all parties concerned, and upon the finding of the personnel administrator, or upon appeal,[1] in favor of the employee, said employee shall be forthwith returned to his or her office or position without loss of compensation, seniority or any other benefits he may have enjoyed, or under such terms as the appeal board shall determine." (Footnote added).

In challenging the director's standing to appeal, Rosalie's counsel, as he did in the Superior Court, points to the "final and binding" verbiage of the statute and stresses that this language has continued to be a part of the statutory framework since it first made its appearance as part of chapter 3324 of the Public Laws of 1954. With such a legislative background, he claims that there is no way we can hold that the General Assembly, by its adoption of the APA in 1962, implicitly repealed the "final and binding" proviso. The trial justice found this argument persuasive, but we do not.

Although we commend counsel's diligence and ingenuity, at oral argument he seemed somewhat perplexed when asked whether an employee whose claim had been rejected by the board was also bound by the sentiments of the finality expressed in the statute. The answer to this inquiry is to be found in the holdings in *Yellow Cab Co. of Providence v. Public Utility Hearing Board*, 101 R.I. 296, 222 A.2d 361 (1966); *Nocera Bros. Liquor Mart, Inc. v. Liquor Control Hearing Board*, 100 R.I. 644, 218 A.2d 659 (1966); and *Hardman v. Personnel Appeal Board*, 100 R.I. 145, 211 A.2d 660 (1965).

In the *Hardman* case, we held that the APA, by its very terms, applied to an employee who was appealing the Personnel Appeal Board's affirmance of his dismissal. There, an employee who had sought direct review of his dismissal by this court by way of common-law certiorari had expressed concern about § 36–4–42's "final and binding" proviso, but this court explained that since the board came within the reach of the APA, the employee had been afforded an express vehicle for judicial review in the Superior Court. Later on, in *Nocera* and *Yellow Cab Co.*, we noted that the General Assembly, by its enactment of the judicial-review provision of the APA, had by necessary implication repealed certain prior legislation relating to judicial review of an agency's control and regulation of the liquor industry or the public utilities. In the same vein, we now find that the "final and binding" mandate of § 36–4–42, whatever might have been its purpose, is today just so much meaningless rhetoric and nothing more. Even though the "final and binding" language has been repeated as the General

---

1. Prior to May 1980 findings of the personnel administrator were appealable by classified employees to the director pursuant to G.L.1956 (1969 Reenactment) § 36–4–40. However, the General Assembly, at its January 1980 session, with the enactment of P.L.1980, ch. 188, created the office of administrator of adjudication so that today appeals from the decisions of the personnel administrator are heard by the administrator of adjudication instead of the director. Any appeals from the decisions of the administrator of adjudication are taken to the Personnel Appeal Board.

Assembly has amended § 36–4–42 on various occasions, this repetition is attributable solely to the difference in draftspersons because at no time has the General Assembly ever indicated an intent to exempt the board from the operation of the APA.

Recently, in *Newman-Crosby Steel, Inc. v. Fascio*, R.I., 423 A.2d 1162 (1980), we noted that although aggrievement for the purpose of attaining judicial review under the APA requires a showing of an injury, we recognized that a governmental official, agency, commission, or board charged with the responsibility of administering a particular law or set of rules and regulations designed to promote the public safety and welfare acts for the people and as such must be permitted to represent the people when a matter of public interest is involved.[2]

Rosalie concedes that the overriding purpose of merit-system legislation is the attainment of an efficient public service that will benefit the people as a whole. Thus, we believe that the director, as a representative of the people, has standing to seek a Superior Court review of the board's decision.

The petition for certiorari is granted, the judgment of the Superior Court is quashed, and the records certified to us are remanded to the Superior Court for further consideration of the director's appeal.

**2.** Among the cases we cited in *Newman-Crosby Steel, Inc. v. Fascio*, R.I., 423 A.2d 1162 (1980), in support of this principle was *Matunuck Beach Hotel, Inc. v. Sheldon*, R.I., 399 A.2d 489 (1979), where we took the position that the question of standing in the public-interest area was not to be determined by the quantum of the public's interest but on whether an unfavorable outcome of a controversy would adversely affect the public interest. This conclusion conforms to our holding in *Rhode Island Ophthalmological Society v. Cannon*, 113 R.I. 16, 317 A.2d 124 (1974), where we modified the test of standing found in *New England Telephone & Telegraph Co. v. Fascio*, 105 R.I. 711, 254 A.2d 758 (1969), and other cases and said that standing would be satisfied by an allegation of injury in fact and, as noted in the *Matunuck Beach* case, the criterion is not to be measured by comparing substantial injury with insubstantial injury, but the line is to be drawn between injury and no injury.