DECISION
Before this Court is an appeal by the State of Rhode Island Division of Personnel (Division or Appellant) from a decision of the Rhode Island Personnel Appeal Board (PAB) that ordered the Personnel Administrator to execute his statutory duties and responsibilities to allocate or reallocate, then properly classify appellee's current position. Simultaneously, the PAB decision affirmed a lower agency decision made by the Office of Personnel Administration (OPA) that denied Keith Fransson's request for reclassification.[1] Jurisdiction is pursuant to G.L. 1956 § 42-35-15 of the Rhode Island Administrative Procedures Act.
 I Facts and Travel
Keith Fransson (Fransson) is an employee in the Community Confinement Division of the Department of Corrections (DOC). In March 2005, he filed a classification questionnaire (or desk audit) seeking reclassification of his current position *Page 2 
as a Correctional Officer (Pay Grade 21A).[2] Specifically, Fransson asserted that his job takes him into the community; requires him to monitor inmates in home confinement, not in a walled correctional facility; troubleshoot monitoring equipment; manage situations in which equipment has failed and inmates may need to be returned to jail; train other officers to perform his functions; facilitate the collection of urine samples; and work on call.[3] After conducting a January 11, 2006 field audit, the Office of Personnel Administration (OPA), through the conclusions of a Deputy Personnel Administrator, found that Fransson was properly classified as a Correctional Officer.[4] Pursuant to G.L. 1956 § 36-4-40, Fransson timely appealed the OPA decision to the Administrator of Adjudication (Administrator).
Catherine Warren, the Administrator, conducted a hearing on April 25, 2006. Sitting as the Hearing Officer, she entertained testimony from three individuals: Fransson; Richard Petronio (Petronio), an OPA representative; and Kenneth Rivard (Rivard), a representative from the Rhode Island Brotherhood of Correctional Officers, Fransson's union. At this hearing, Fransson, for the first time, stated that he sought reclassification to the Community Correctional Specialist I (Pay Grade 24A) position.[5] *Page 3 
He commented that this classification represents "the closest thing" to his current responsibilities.[6] Tr. at 4, lines 19-20.
During the hearing, Petronio discussed the considerations underlying the prior OPA decision. Before concluding that Fransson was properly classified as a Correctional Officer, the OPA examined three other positions — Correctional Specialist I, Community Correctional Specialist I, and Correctional Investigator I — only to determine that each strayed too far from Fransson's activities.[7] Although the OPA drew these conclusions, Petronio testified that the Correctional Officer title also failed to encompass Fransson's functions. In fact, Petronio commented that "we really do not have a class that addresses his . . . title."Tr. at 9, lines 23-24. Furthermore, Petronio stated that the OPA made a recommendation to the agency that it should revise the Correctional Officer classification or create a new class. Tr. at 10, lines 1-3. This recommendation, however, had not been included in the OPA decision.Tr. at 11, lines 1-3.
Armed with this information, the Administrator rendered a decision on May 8, 2006 which affirmed the OPA decision.[8] She found that Fransson indeed performed the duties about which he and Rivard testified as well as those described in the OPA decision *Page 4 
and Petronio's testimony. The Administrator also recognized that the OPA had considered various other positions in evaluating Fransson's classification request prior to rendering its own decision. As a result, she found that Fransson was "not substantially performing work out of class as a Community Correctional Specialist I, Correctional Investigator I, or Correctional Specialist I."
Aggrieved by this decision, Fransson appealed the Administrator's decision to the PAB pursuant to G.L. 1956 § 36-4-41.[9] A series of correspondence ensued among parties involved in this administrative process. A letter dated June 14, 2006 from the PAB to Fransson indicated that Fransson would be required to fill out a "jurisdictional questionnaire" for their review. The form was returned by Fransson and stamped as received on July 5, 2006, per the PAB's deadline. Through this form, Fransson requested a review, rather than a public hearing, to assess the Administrator's determination.
In addition, Anthony Cofone (Cofone), Chairman of the Personnel Appeal Board, sent a July 6, 2006 letter to the Administrator's office notifying the department that Fransson was instructed to obtain the transcripts from his hearing. In another letter sharing the same date, Cofone wrote to Ashbel T. Wall, Director, DOC, seeking documentation related to the agency's denial of Fransson's desk audit. In response via letter dated July 20, 2006, Ellen Evans Alexander, Assistant Director, DOC, notified the PAB that the Office of Personnel Administration, not the Department of Corrections, conducted Fransson's desk audit.
On February 7, 2007, the PAB rendered its decision. The PAB specifically found that Fransson should not be reclassified as a Community Correctional Specialist I, for he does not counsel, but instead monitors, individuals in home confinement. See PAB *Page 5 
Decision, ¶ 16. Thus, it affirmed the Administrator's decision.Id. at ¶ 20. In addition, the PAB found that Fransson's primary job duties and responsibilities are not set forth in his classification description. Id. As such, it ordered the Personnel Administrator "to appropriately allocate or reallocate Mr. Fransson's position and to classify his position in the classified service according to the actual duties and responsibilities of his position."[10] Id. at ¶ 24.
The appellant Division, of which the personnel administrator is the head,[11] subsequently filed a complaint in the Superior Court pursuant to G.L. 1956 § 42-35-15 seeking judicial review of the PAB's decision. The Division contends that the PAB erred in considering issues that were not properly before it on appeal; violated the Division's due process rights while undertaking its review of Fransson's case; and exceeded its jurisdiction and statutory authority when crafting its remedy. Finally, the Division contends that a previous arbitration decision, relating to proceedings in which Fransson's union was a party, is dispositive, and thereby precludes any review of the instant matter.
The PAB challenges the Division's suit, most notably contending that the Division lacks standing under the Administrative Procedures Act to bring this appeal. The PAB further counters that it properly considered issues before it and awarded a remedy grounded in its statutory authority and jurisdiction. Further, the PAB contends *Page 6 
that the arbitrator's decision is not dispositive, as different parties were involved in the respective proceedings and different rights were adjudicated.
 II Standard of Review
The Superior Court's review of a final administrative decision is governed by G.L. 1956 § 42-35-15(g) of the Administrative Procedures Act (APA). The relevant portion of the APA appears as follows:
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
While sitting in an appellate capacity with a limited scope of review, this Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Ctr. for BehavioralHealth v. Barros, 710 A.2d 680, 684 (R.I. 1998); Mine Safety AppliancesCo. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). The Court must affirm an agency's decision on questions of fact unless such decisions are "totally devoid of competent evidentiary support in the record."See Baker v. Dep't of Employment Training Bd. of Review, 637 A.2d 360,363 (R.I. 1994). Thus, the Superior Court must not substitute its judgment even though it may have been inclined to *Page 7 
arrive at alternate conclusions and inferences based upon review of the record and the evidence presented. Johnston Ambulatory Surgical Assocs.,Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (citations omitted);Barrington Sch. Comm. v. R.I. Labor Relations Bd., 608 A.2d 1126, 1138
(R.I. 1992). Thus, "[t]he Superior Court is confined to a determination of whether there is any legally competent evidence to support the agency's decision." Envt'l Scientific Corp. v. Durfee, 621 A.2d 200, 208
(R.I. 1993).
On questions of law, "[w]here the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized." Gallison v. Bristol Sch. Comm., 493 A.2d 164, 166 (R.I. 1985). However, the Court is not bound by an administrative agency's determinations as to questions of law; it will review these questionsde novo. Arnold v. R.I. Dep't of Labor Training Bd. of Review,822 A.2d 164, 167 (R.I. 2003). Consequently, considerations of agency jurisdiction and statutory interpretation are questions of law for which the Court is ultimately responsible. City of East Providence v. PublicUtilities Comm'n, 566 A.2d 1305, 1307 (R.I. 1989).
 III Analysis A Standing
An agency generally lacks standing under the APA to appeal the decision of another agency. See Dir., OWCP v. Newport News Shipbuilding Dry Dock, Co., 514 U.S. 122, 129 (1995). Specifically, under §42-35-15 of Rhode Island's APA, "[a]ny person, including any small business, who has exhausted all administrative remedies *Page 8 
available to him or her within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter." G.L. 1956 § 42-35-15(a). The APA defines "person" as "any individual, partnership, corporation, association, governmental subdivision, or public or private organization of any characterother than an agency." G.L. 1956 § 42-35-1(7) (emphasis added). Thus, the plain language of the statute precludes judicial review of appeals brought by an agency.
The Division neither disputes the fact that it is an agency under the APA,[12] nor that its personnel administrator is a statutory officer under G.L. 1956 § 36-3-4. As such, both parties normally would be barred from instituting this appeal under traditional notions of standing.Tillinghast v. Brown Univ., 24 R.I. 179, 183-84, 52 A. 891, 892 (1902) (holding denial of plaintiff's "personal or property right" at hands of agency warrants standing to appeal). The personnel administrator contends, however, that this matter falls within the public interest exception to our general standing rule, which "permits an agency itself to seek review, even though not technically aggrieved, if the public has an interest in the issue which reaches beyond that of the immediate parties." Buffi v. Ferri, 106 R.I. 349, 351, 259 A.2d 847, 849 (1902). To invoke this exception, the agency must demonstrate that the public interest at stake is "substantial"; it must be "one in which the public has a very real stake," where an "unfavorable outcome of the controversy will adversely affect the public interest." Renza v. Murray,525 A.2d 53, 56 (R.I. 1987). *Page 9 
This case inevitably requires an interpretation of the Merit System statutes. In Roher v. Ford, 425 A.2d 529, 531 (R.I. 1981), the Rhode Island Supreme Court determined that the public retains a substantial interest in the outcome of Merit System appeals. In fact, the Court stated that "the overriding purpose of merit-system legislation is the attainment of an efficient public service that will benefit the people as a whole." Id. As a result, the Director of Administration, as the people's representative, was permitted to seek Superior Court review of a PAB decision. Id.; see also Renza, 525 A.2d at 56 (finding agency director of Department of Employment Security had standing to obtain review where "`public has an interest in the issue at stake which reaches out beyond that of the immediate parties'") (citations omitted).
In his brief, Fransson seeks to distinguish the instant case fromRoher and thereby urges this Court to follow the Superior Court decision of State of R.I. Dep't of Children, Youths Families v. PersonnelAppeal Board (DCYF), No. PC 92-2428, 1995 R.I. Super. LEXIS 149 (June 1, 1995). In DCYF, the agency appealed a decision of the PAB that reinstated one of its previously terminated employees. Id. at *1. While determining that DCYF did not have standing to pursue its appeal, the Court read the public interest exception as applied in Roher narrowly. The Court found that the exception should only bear upon cases involving laws that are enacted for the primary purpose of benefiting the public.[13] Id. at *8. Fransson contends that the exception does not apply here, as the Division's act of opposing the PAB's order to re-classify him lacked substantial public impact. In essence, Fransson argues that there was no public interest intertwined with the review of a desk audit — his desk audit — to determine his specific classified status. *Page 10 
This Court finds that the paramount issues in this case revolve around an interpretation of the Merit System statutes. This legislation is the same legislation that the Supreme Court in Roher determined to have an impact on the public interest. The ability of an aggrieved member in classified service to appeal decisions that are determinative of his title and pay grade are intricately connected to the provisions of this legislation.[14] Of similar connection are the duties of those bodies within the agency that have the authority to review such requests.[15]
Therefore, this Court finds that the issues in this case involve a substantial public interest, and the personnel administrator has standing to bring this appeal.
 B Jurisdiction
The sequence of interagency activity that prompted the instant appeal began with Fransson's request for a desk audit to evaluate his current classification against the duties he actually performs. Upon the OPA's failure to render a decision in his favor, Fransson appealed to the Administrator via G.L. 1956 § 36-4-40.[16] Per his request, Fransson received a hearing on April 25, 2006 before the Administrator, who rendered a written decision on May 8, 2006. Both parties appear to recognize May 10, 2006 as the date of mailing; the certification attached to the Administrator's decision supports this conclusion. Dissatisfied with the outcome of the Administrator's decision, Fransson *Page 11 
appealed via letter dated June 5, 2006 to the PAB pursuant to § 36-4-41. It is this stage of the appellate process that this Court must examine to determine whether Fransson's appeal was timely and therefore properly before the PAB.[17]
While raising a due process argument regarding the procedural steps taken by the PAB prior to reviewing the Administrator's decision, appellant simultaneously questions the propriety of the PAB's exercise of jurisdiction over Fransson's appeal. As the question of jurisdiction is largely one of law that is reviewed de novo by this Court,[18] and as the issue of jurisdiction can be raised at any time,[19] this Court will proceed to address the PAB's jurisdiction over Fransson's appeal from the Administrator. See In re Advisory Opinion to the Governor,732 A.2d 55, 60 (R.I. 1999) (undertaking de novo review of question of law without deference to agency's interpretation); see also Rowse v. PlatteValley Livestock, Inc., 597 F. Supp. 1055, 1057 (D. Neb. 1984) (regarding agency's jurisdiction, question of law is subject to denovo review).
General Laws § 36-4-41, which governs Fransson's appeal of the Administrator's decision to the PAB, provides as follows:
 "[a]ny person with provisional, probationary or permanent status who feels aggrieved by a decision of the administrator of adjudication may, within thirty (30) calendar days of the rendering of a decision request in writing for the personnel appeal board to review the decision or conduct a public hearing. Within thirty (30) calendar days of the receipt of the request, the personnel appeal board shall make a report of its findings and recommendations to *Page 12 
the governor based upon the decisions of the administrator of adjudication or the testimony taken at a hearing."
This statutory period for claiming an appeal is jurisdictional in nature. See Wood v. Dir. of the Dep't of Envtl. Mgmt. v. Ford,525 A.2d 901, 903 (R.I. 1987) (determining statutory period for claiming an appeal from an administrative agency to its hearing tribunal is jurisdictional in nature); see also Charles H. Koch, 2Administrative Law Practice § 5.27[4], at 85 (recognizing agency possesses "inherent authority" to establish time limitation for appeals from a presiding official's decision). In Wood, an aggrieved employee appealed a decision of an appointing authority which terminated his employment with the Department of Environmental Management.Id. at 902. The applicable statutory provision in Wood fell within the merit system and contained language that was strikingly similar to the one at issue in the instant matter.[20] See G.L. 1956 (1969 Reenactment) § 36-4-42.
In Wood, appellant utilized § 36-4-42 to appeal an unfavorable action of an appointing authority to the personnel appeal board. Section36-4-42 provided:
 "[a]ny person with provisional, probationary or permanent status who feels aggrieved by an action of an appointing authority resulting in a demotion, suspension, layoff, or dismissal or by any personnel action which an appointing authority might take which causes the person to believe that he has been discriminated against . . ., may, within ten (10) calendar days of the mailing of the notice of such action, appeal in writing to the personnel appeal board for a review or public hearing." *Page 13 
The trial justice, as well as the Supreme Court, determined that the PAB had erroneously considered the matter before it on the merits, as the employee's appeal to the PAB had not been filed within the requisite time frame. Id. at 903. Thus, the decision of the PAB in Wood was in excess of the statutory authority of the agency and G.L. 1956 §42-35-15(g)(5). Id.; see also G.L. 1956 § 42-35-15(g)(5) (prohibiting decisions that are "[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record").
Further support for the jurisdictional nature of the merit system statutory provision in question may be gleaned from the PAB's treatment of appeals from lower agency decisions that do not fall within the statutory time frame. See Sutherland, 3 Statutory Construction § 65:3, at 404 (recognizing agency's construction of statute typically entitled to great weight and deference). For example, the PAB has dismissed — and the Superior Court has upheld such dismissals of — other appeals under § 36-4-42 when the aggrieved party failed to file a timely request for review. See Petrarca v. Personnel Appeal Board, C.A. No. 98-2631, 1999 R.I. Super. LEXIS 94, at *10 (R.I.Super.Ct. April 5, 1999) (upholding PAB's dismissal of appeal upon employee's failure to meet thirty-day statutory deadline of § 36-4-42); Gajic v. Personnel AppealBoard, C.A. No. 87-0317, 1987 R.I. Super. LEXIS 199, at *7 (R.I.Super.Ct. Sept. 15, 1987) (upholding PAB's dismissal of appeal upon employee's failure to meet the twenty-day deadline of § 36-4-42).[21] Similarly significant is the absence of any provision in PAB's *Page 14 
regulations which discusses the discretionary ability of the board to dismiss on jurisdictional grounds.[22] See Sutherland, 1AStatutory Construction § 31:6, at 729 (Norman J. Singer, 6th ed. 2002) (recognizing "if an agency does not include provisions in its regulations it is also considered to be significant"); see also Sheehanv. Employees Retirement Bd. of R.I., C.A. No. PC 03-3970, 2007 R.I. Super. LEXIS 45, at *25 (R.I.Super.Ct. May 2, 2006) (finding provisions in ERSRI Regulations permit discretion in Retirement Board's exercise of jurisdiction over lower agency appeal when request filed beyond statutory deadline). Therefore, an untimely appeal of an Administrator's decision to the PAB will deprive the PAB of jurisdiction.
Here, Fransson's written request to appeal the Administrator's decision was dated June 5, 2006. The envelope containing this request was postmarked June 6, 2006. The letter itself had been stamped "received" by the PAB on June 13, 2006. In fact, two other documents, both included as exhibits to this matter, specifically indicate that the PAB received Fransson's appeal on June 13, 2006.[23] Most notably, a letter was sent to Fransson on June 14, 2006, requesting that he complete a jurisdictional questionnaire. *Page 15 
The PAB decision, however, states that "[b]y letter dated June 5, 2006, Mr. Fransson appealed the decision of the Administrator of Adjudication to this Board." See PAB Decision, February 7, 2007, at ¶ 15 (emphasis added).[24] This Court also notes that Fransson's own answers to the jurisdictional questionnaire are of no aid in determining whether he was in compliance with G.L. 1956 § 36-4-41; he left question four, which pertained to the filing of his appeal with the PAB, entirely blank.[25]
As a result of the aforementioned facts, this Court finds that appellant's inquiry into the date that the PAB received Fransson's request is warranted. This matter presents conflicting information which ultimately bears on the PAB's jurisdiction over this matter, and the discrepancy in such information was not resolved within its decision. As a result, this Court must remand this matter to the PAB with instructions to determine whether it properly retained jurisdiction over this appeal pursuant to G.L. 1956 § 36-4-41.[26] *Page 16 
 IV Conclusion
After review of the record before it, this Court finds that the Division of Personnel Administration had standing to bring the instant appeal under the public interest exception to G.L. 1956 § 42-35-15. This Court also finds that, while exercising its authority to hear appeals from decisions of the Administrator of Adjudication, the Personnel Appeal Board lacked sufficient support for exercising jurisdiction over this matter. For the reasons set forth herein, and given the basis of this disposition, the other issues raised by appellant need not be addressed at this time. Accordingly, this matter is remanded to the Personnel Appeal Board for consideration and further proceedings consistent with this decision. This Court will retain jurisdiction.
[1] In denying appellee's request for reclassification, the Personnel Appeal Board affirmed a decision of the Administrator of Adjudication that had been made pursuant to G.L. 1956 §§ 36-4-40 and 36-4-40.2.
[2] The classification questionnaire was filed with the Department of Corrections Personnel Office in August 2005, after appellee's immediate supervisor and the department head reviewed appellee's responses to the questions set forth therein. Neither appellee's immediate supervisor nor the department head noted any inaccuracies in appellee's description of his current responsibilities and duties. Box 26, however, the space permitting an employee to identify the classification title which he or she feels is consistent with the duties and responsibilities currently performed, was left blank by appellee.
[3] See Classification Questionnaire, Answer 17B; Tr. at 24, lines 5-22; Tr. at 26 lines 6-14; Tr. at 27, lines 4-22.
[4] In light of the "basic allocation factors of character of work, authority and responsibility," Deputy Personnel Administrator Melanie Marcaccio determined that "the subject position is best classified as Correctional Officer." See OPA Decision, March 21, 2006.
[5] See Tr. at 4, lines 19-20. Appellee appears to have directed the Administrator's attention to the written description of the Community Correctional Specialist I position.
[6] Rivard also testified that he believed the Community Correctional Specialist I position came closest to mirroring appellee's duties. He stated that the traditional responsibilities associated with Correctional Officers at the Adult Correctional Institution (ACI) and those associated with the six Correctional Officers at the Home Confinement Unit were "totally different." Tr. at 13-14.
[7] The OPA found that the Correctional Specialist I position was inapplicable, as it pertained to the care, custody, and control of inmates at a boot camp facility. See Tr. at 7, lines 14-19. The Community Correctional Specialist I job specification also failed to fit appellee's duties because it related to the provision of counseling, advice, and assistance to offenders. See Tr. 5-15. Similarly, the Correctional Investigator I description did not resemble appellee's responsibilities; rather, that position entailed patrolling and inspecting buildings, grounds, work sites, and other areas where ACI inmates are present. See Tr. at 8, lines 16-20.
[8] The certification indicates that the decision was mailed on May 10, 2006 to appellee's home, and delivered to his place of employment. In addition, the certification identifies a number of persons to whom the decision was hand delivered: George Truman, Jr., Associate Director of Human Resources; Deborah Rotundo, Human Resources Analyst I; and Richard Petronio and Melanie Marcaccio, both at the Personnel Office in the Department of Administration.
[9] The circumstances surrounding this appeal will be discussed in additional detail infra.
[10] The employment classification system under which Fransson seeks classification and the appeals process which ensued as a result thereof are established in Title 36, Chapter 4 of the General Laws, entitled "Merit System." The purpose of the "Merit System," as illuminated in G.L. 1956 § 36-3-2 is ". . . to guarantee to all citizens a fair and reasonable opportunity for public service, to establish conditions of service which will attrack officers and employees of character and capacity, and to increase the efficiency of the governmental departments and agencies by the improvements in methods of personnel administration." In furthering this purpose, the Department of Administration, through the Division of Personnel Administration, is charged with supervising and implementing the operating of the merit system. See generally G.L. 1956 § 36-3-5.
[11] See G.L. 1956 § 36-3-4 (establishing division of personnel administration within department of administration and naming personnel administrator the head of such division); see also G.L. 1956 § 36-3-3
(defining aforementioned terms).
[12] "Agency" is defined as follows: "each state board, commission, department, or officer, other than the legislature or the courts, authorized by law to make rules or to determine contested cases, and all `authorities', as that term is defined below. . . ." In addition, §42-35-18 does not remove the Division of Personnel from the purview of the APA.
[13] In DCYF, the Court found that DCYF's purpose was not to ensure efficient public service, as was the Department of Administration's; therefore, the controversy between the DCYF and the PAB affected only the parties involved thereto. DCYF, No. PC 92-2428, 1995 R.I. Super. LEXIS 149, at *8 (June 1, 1995).
[14] See G.L. 1956 § 36-4-40 (providing person with provisional, probationary, or permanent status aggrieved by personnel administrator's decision ability to appeal to administrator of adjudication for the department of administration); Id. at § 36-4-41 (permitting aggrieved party's appeal from administrator of adjudication's decision to personnel appeal board).
[15] See G.L. 1956 § 36-4-40.2 (describing actions required of administrator of adjudication upon receiving appeal from aggrieved party of decision of personnel administrator); Id. at § 36-3-10 (defining scope of PAB's appellate capacity); Id. at § 36-4-41 (setting forth PAB's obligations upon receipt of request for aggrieved party's review of, or public hearing on, the administrator of adjudication's decision).
[16] No information exists in the record or in the briefs submitted by the parties to indicate that this appeal was untimely with respect to the ten-day deadline set forth in § 36-4-40.
[17] See G.L. 1956 § 36-3-10(b) (dictating "[a]ppeals [to the personnel appeal board] shall be taken in accordance with the provisions of this chapter and chapter 4 of this title of the personnel rules provided. . . .")
[18] See Rossi v. Employees' Retirement Sys. Of the State ofR.I., 895 A.2d 106, 110 (R.I. 2006) (noting "[a]lthough factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation is a question of law to which [the courts] apply de novo review.") (citing In re Advisory Opinion to theGovernor, 732 A.2d 55, 60 (R.I. 1999); City of East Providence v. PublicUtilities Comm'n, 566 A.2d 1305, 1307 (R.I. 1989)).
[19] See Goodman v. Turner, 512 A.2d 861 (R.I. 1986) (finding question involving statutorily created condition precedent to suit can be raised by parties or court at any time).
[20] See G.L. 1956 (1969 Reenactment) § 36-4-42. In Wood, appellant utilized § 36-4-42 to appeal an unfavorable action of an appointing authority to the personnel appeal board. Section 36-4-42 provided:
 "[a]ny person with provisional, probationary or permanent status who feels aggrieved by an action of an appointing authority resulting in a demotion, suspension, layoff, or dismissal or by any personnel action which an appointing authority might take which causes the person to believe that he has been discriminated against . . ., may, within ten (10) calendar days of the mailing of the notice of such action, appeal in writing to the personnel appeal board for a review or public hearing."
[21] Other statutes involving interagency appeals have also been construed as jurisdictional in nature. See Spry v. R.I. Dep't of HumanServs., C.A. 03-6641, 2004 R.I. Super. LEXIS 190, at *8 (R.I.Super.Ct. Nov. 9, 2004) (finding failure to meet thirty-day deadline effectively bars party from appealing denial for medical assistance and deprives Department of Human Services from ruling on merits); Cinq-mars v.Gannon, C.A. No. PC 02-1849, 2003 R.I. Super. LEXIS 2, at *9-10 (R.I.Super.Ct. Jan. 10, 2003) (finding Zoning Board acted in violation of statutory provisions by exercising jurisdiction over interagency appeal from decision of City Solicitor that had not been timely filed within thirty-day deadline); Certain Property Owners v. Pawtucket Bd. ofLicense Commissioners, C.A. No. PC2000-2953, 2002 R.I. Super. LEXIS 116, at *7 (R.I.Super.Ct. Aug. 27, 2002) (concluding filing of appeal application from decision by liquor-licensing board to director jurisdictional).
[22] Compare Rules Regulations of the Dep't of Admin., Office of Admin. Hearings, Practice Procedures Before the Administrator ofAdjudication § 4.02, at 5 (stating "[f]ailure to conform to requirements [of filing within the statutory time limit] shall constitute sufficient grounds, (at the discretion of the Administrator of Adjudication), for dismissal of the request for hearing") with Personnel Appeal Board, Rules Regulations (lacking provision regarding discretion of PAB to dismiss appeal for failure to comply with statutory time frame).
[23] See Exhibit 6, Letter from Anthony Cofone, Chairman, Personnel Appeal Board, to Ashbel T. Wall, Department of Corrections (stating PAB's receipt of Fransson's appeal on 6/13/07); Exhibit 9, Letter from PAB to Fransson Requesting Jurisdictional Questionnaire (stating that on 6/13/07, PAB received Fransson's written request of appeal). A June 13, 2006 date of receipt would place Fransson's appeal beyond the statutory time frame set forth in G.L. 1956 § 36-4-41, thereby removing the PAB's authority to hear Fransson's appeal; see also Mauricio v. Zoning Bd. ofReview, 590 A.2d 879, 880 (R.I. 1991) (stating "any risk of nondelivery must be borne by the party who seeks the [action]"); Spry v. R.I. Dep'tof Human Servs., C.A. No. 03-6641, 2004 R.I. Super. LEXIS 190, *9 (R.I.Super.Ct. Nov. 9, 2004) (finding party aggrieved by Medical Assistance Review Team's decision responsible for ensuring timely receipt and filing of request for appeal by Department of Human Services).
[24] The postmarked date of June 6, 2006 on Fransson's letter precludes a June 5, 2006 receipt by the PAB. Absent evidence that this letter was hand-delivered on June 5, 2006, the PAB could not have been aware of its existence on that date as alluded to in its decision.See PAB Decision, February 7, 2007, at ¶ 15.
[25] Question four requires answers to the following:
 "4. Did you file your appeal in writing to the Board within 30 calendar days of the adverse action?
 Yes ____ No ____
 A. If you claim you filed your appeal to the Board within 30 days, please fill in the following:
 1. Was the notice of adverse action hand-delivered to you?
 Yes ____ No ____
 A. If so, on what date did you receive it by hand delivery?
 _____________ (please attach a copy)
 2. Was the notice of adverse action mailed to you?
 Yes ____ No ____
 A. If so, on what date was the notice mailed?
 _____________ (Attach a copy of the notice and the envelope it was mailed in.)
 3. On what date was you written appeal received by the Board?
Question four applies to appeals from an adverse decision of the Administrator under § 36-4-41 as well as adverse actions of an appointing authority under § 36-4-42. The record does not indicate that the PAB inquired further as to those missing answers.
[26] Absent evidence that the PAB received Fransson's appeal within the thirty-day time frame, it cannot exercise jurisdiction over the matter. Regardless of whether this Court were to look at the day the PAB decision was rendered, or mailed, or received — since it had been hand-delivered on the date of certification to Fransson's place of work — Fransson's request to the PAB, if received on June 13, 2006, would have been untimely filed. *Page 1