James J. MALACHOWSKI

v.

STATE of Rhode Island et al.

Nos. 2003–268–M.P., 2003–339–APPEAL.

Supreme Court of Rhode Island.

July 8, 2005.

Martin K. DeMagistris, Esq., Warwick, for Plaintiff.

Douglas J. Emanuel, Esq., Providence, for Defendant.

Before: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on March 8, 2005. The plaintiff, James J. Malachowski (Malachowski or plaintiff), pursuant to an appeal and a petition for certiorari, seeks our review of a Superior Court judgment that dismissed his complaint and granted summary judgment in favor of the defendants: the State of Rhode Island; the Personnel Appeal Board; the Unclassified Pay Plan Board; the Department of Administration; Lincoln C. Almond, in his capacity as the governor of the State of Rhode Island (Governor Almond); Anthony Bucci, in his capacity as personnel administrator; and Robert Carl, in his capacity as the chairman of the Unclassified Pay Plan Board (collectively defendants).[1] For the reasons set forth herein, we deny the petition for certiorari and sustain the appeal from the Superior Court's grant of summary judgment against the plaintiff in his declaratory judgment action.

### Facts and Travel

When the Legislature enacted the Utility Restructuring Act of 1996(act), G.L.1956 chapter 1 of title 39, as enacted by P.L. 1996, ch. 316, § 1, plaintiff was serving a six-year term as the chairperson of the Public Utilities Commission (PUC). The act created the position of public utilities administrator (administrator) and granted the administrator authority to direct the Division of Public Utilities and Carriers. Section 39–1–3. The act did not abolish plaintiff's position as chairperson of the PUC (chairperson or PUC chairperson), a position in the unclassified service. The plaintiff remained the chairperson; however, the act reassigned a portion of plaintiff's duties to the administrator.

Governor Almond, as plaintiff's appointing authority, submitted a request to the Unclassified Pay Plan Board (Pay Plan Board),[2] proposing that the pay grade for

---

1. The plaintiff originally named Lincoln C. Almond, in his capacity as governor, and Robert Carl, in his capacity as the chairman of the Unclassified Pay Plan Board, as defendants. Rule 25(d)(1) of the Superior Court Rules of Civil Procedure provides that "[w]hen a public officer is a party to an action in an official capacity and during its pendency * * * ceases to hold office, the action does not abate and the public officer's successor is automatically substituted as a party." Governor Donald L. Carcieri was inaugurated as governor on January 7, 2003, succeeding Lincoln C. Almond. Robert Carl is no longer the chairman of the Unclassified Pay Plan Board, and as of the date this opinion was published, no one has been named to that position.

2. We note the Pay Plan Board, although created by G.L.1956 § 36–4–16, is *sui generis* in nature—the Pay Plan Board determines salary adjustments for unclassified (non-union) employees outside the normal budget process. During the January 2005 Session of the General Assembly, two bills, S–0117 and H–5104, were introduced into the Rhode Island Senate and House of Representatives to eliminate the Pay Plan Board and transfer its duties to the Department of Administration. If enacted into law, the Department of Administration would have sole authority to make salary rec-

the chairperson be reduced based upon the allocation of some of the chairperson's responsibilities to the administrator. The plaintiff appeared before the Pay Plan Board and filed a memorandum, in which he argued, unsuccessfully, against any reduction in his salary. On February 24, 1997, the Pay Plan Board approved Governor Almond's request and slashed the chairperson's salary by at least two pay grades.[3] On March 19, 1997, plaintiff received a letter (letter) signed by Governor Almond and the chairperson of the Pay Plan Board notifying him of the Pay Plan Board's action. The plaintiff sought relief from the administrator of adjudication for the Department of Administration,[4] the Personnel Appeal Board, and ultimately, the Superior Court.

On March 27, 1997, plaintiff filed an appeal with the Personnel Appeal Board, seeking review of the Pay Plan Board's decision to reduce his pay grade. Although in answer to a jurisdictional questionnaire for the Personnel Appeal Board, plaintiff specified that his grounds for appeal included political discrimination,[5] the Personnel Appeal Board dismissed plain-

tiff's appeal for lack of jurisdiction on October 7, 1998.

On October 30, 1998, plaintiff turned to the Superior Court; in a two-count complaint Malachowski sought review of the Personnel Appeal Board's final decision pursuant to the Administrative Procedures Act (APA), G.L.1956 § 42–35–15, and also included a claim for declaratory relief. In the declaratory judgment count, plaintiff sought a declaration of his rights under G.L.1956 §§ 36–4–16.3 [6] and 36–4–16.4, as amended by P.L.1990, ch.332, art. 1, § 13.[7] The parties cross-motioned for summary judgment. The trial justice concluded that plaintiff was challenging a final decision of the Pay Plan Board, an administrative agency governed by the APA, and therefore, the Superior Court could only review the claims if plaintiff complied with the provisions of the APA. The trial justice granted defendants' motion for summary judgment, concluding that, by failing to file his complaint within thirty days after receiving notice of the salary reduction, plaintiff's appeal to the Superior Court was untimely pursuant to § 42–35–15. The trial justice also dismissed plaintiff's claim for declaratory relief, concluding that the

---

ommendations to the governor; the governor would submit all unclassified pay plan changes through the normal budget process.

3. The Pay Plan Board reduced the pay grade for the chairperson of the PUC from a Grade 946 to a Grade 842; this amounted to a $11,664 reduction in salary per year.

4. Malachowski's appeal to the administrator of adjudication was denied on the ground that only employees in the classified service could avail themselves of this remedy. Malachowski did not appeal that decision to this Court.

5. General Laws 1956 § 36–3–10(3) provides that the Personnel Appeal Board shall hear appeals:

"By any person who holds the belief that he or she has been discriminated against be-

cause of his or her race, sex, age, disability, or his or her political or religious beliefs in any personnel action."

6. Section 36–4–16.3 provides, in part, that "salary adjustments for unclassified employees made by the [Pay Plan Board] during its review [shall not] exceed two (2) grades per year at the maximum of the grade."

7. Section 36–4–16.4(a),(c), as amended by P.L.1990, ch.332, art. 1, § 13 provides in part that the Pay Plan Board shall meet in January of each year "to determine salaries to be paid to directors of all state departments, to judges of all state courts, and to the judges of the [W]orkers' [C]ompensation [C]ourt," but "[i]n no event will the board lower the salaries of existing directors, judges, and [W]orkers' [C]ompensation judges during their term of office."

APA "is the single and exclusive method of obtaining judicial review of agency decisions."

■ In addition to appealing the grant of summary judgment in the declaratory judgment action, plaintiff sought review in this Court by petition for certiorari challenging the trial justice's dismissal of his administrative appeal from the decision of the Personnel Appeal Board. On April 30, 2003, the Superior Court entered final judgment in favor of defendants. We granted certiorari and consolidated all proceedings before this Court.[8]

### Standard of Review

■ "On certiorari, our review of the record 'is limited to examining the record to determine if an error of law has been committed.'" *McCarthy v. Environmental Transportation Services, Inc.*, 865 A.2d 1056, 1059 (R.I.2005) (quoting *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I. 1994)). "We do not weigh the evidence on certiorari, but only conduct our review to examine questions of law raised in the petition." *Jeff Anthony Properties v. Zoning Board of Review of North Providence*, 853 A.2d 1226, 1229 (R.I.2004).

■ With respect to an appeal from a grant of summary judgment, we undertake a *de novo* review. *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003). In conducting that review, we are bound by the same criteria as those employed by the trial justice. *M & B*

*Realty, Inc. v. Duval*, 767 A.2d 60, 63 (R.I.2001). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." *United Lending Corp.*, 827 A.2d at 631 (quoting *Carlson v. Town of Smithfield*, 723 A.2d 1129, 1131 (R.I.1999)). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Id.* (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996)).

### Applicability of the Administrative Procedures Act

The trial justice concluded that plaintiff was aggrieved by a decision of the Pay Plan Board that reduced his salary. She also determined that the Pay Plan Board was an administrative agency pursuant to the APA, and therefore, plaintiff's challenge to the Pay Plan Board's decision was governed by the APA's provisions. Because plaintiff failed to appeal the decision of the Pay Plan Board to the Superior Court within thirty days after the letter notifying plaintiff of the Pay Plan Board's action was mailed, as required by § 42–35–15, the trial justice granted summary judg-

---

8. A petition for writ of certiorari is the proper procedure to obtain this Court's review of a final judgment from proceedings brought under G.L.1956 § 42–35–15. *Carrier v. Personnel Appeal Board*, 701 A.2d 1027, 1028 (R.I. 1997) (mem.). Also, in this case, we will review the summary judgment entered against plaintiff in the declaratory judgment action through his appeal. *Travelers Property*

*and Casualty Corp. v. Old Republic Insurance Co.*, 847 A.2d 303, 304 (R.I.2004). We note that plaintiff did not petition this Court for issuance of a writ of certiorari to address the Superior Court's denial of his motion for summary judgment in the declaratory judgment claim, and therefore, that issue is not before us.

ment.[9]

Pursuant to § 42–35–18(a), the APA applies "to all agencies and agency proceedings not expressly exempted." We have consistently held that the APA was "intended to provide an exclusive method of judicial review of agency decisions unless the agency is one of those specifically exempted by the provisions of § 42–35–18." *Great American Nursing Centers, Inc. v. Norberg*, 439 A.2d 249, 251 (R.I.1981).

■ We note at the outset that the Pay Plan Board and its proceedings are not explicitly exempted from the APA. Section 42–35–18. Thus, if the Pay Plan Board meets the statutory definition of an agency—"each state board, commission, department, or officer, other than the legislature or the courts, authorized by law to make rules or to determine contested cases"— the APA governs the issues in this case. Sections 42–35–1(a); *see* 42–35–18. In order for its proceedings to be governed by the APA, an administrative agency must have independent rulemaking authority or the responsibility of determining contested cases.

■ The Pay Plan Board does not meet the statutory definition of an agency because it has no rulemaking authority and is not empowered to determine contested cases. We recognize that § 36–4–16.2 grants the Pay Plan Board the authority "to establish a pay plan for unclassified employees of the state, including such rules and regulations as are necessary to implement and complement the plan." However, the governor is vested with final approval authority, and the governor may adopt any changes to the plan that he or she deems necessary. Section 36–4–16.3. This demarcation of authority is conclusive on the issue of the Pay Plan Board's independent rulemaking power.[10] We are satisfied that the Pay Plan Board is not authorized by law to make rules within the meaning of the APA.[11]

■ The Pay Plan Board not only lacks rulemaking authority, it is not au-

---

9. Section 42–35–15(b) provides, in pertinent part: "[p]roceedings for review are instituted by filing a complaint in the [S]uperior [C]ourt * * * within thirty (30) days after mailing notice of the final decision of the agency * * *."

10. Section 36–4–16.3 provides, in pertinent part:

"Salaries of unclassified personnel.— * * * [T]he [Pay Plan B]oard shall approve and adopt the plan and regulations with such changes as it deems necessary and order their application to the positions in the unclassified service. *The * * * [P]ay [P]lan [B]oard shall submit the plan and regulations to the governor who shall approve and adopt the plan with such changes as he or she deems necessary and order their application to the position in the unclassified service.* When the pay plan and regulations have been adopted they shall constitute the official pay schedule for the positions in the unclassified service." (Emphasis added.)

Although § 36–4–16, the statutory provision establishing the Pay Plan Board, describes the Pay Plan Board as "a permanent agency of government," this section is not part of the APA and does not cross-reference the APA. Whether the Pay Plan Board falls within the definition of "agency" provided in the APA is dispositive.

11. Section 42–35–1(h) provides:

" 'Rule' means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, but does not include (1) statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public, or (2) declaratory rulings issued pursuant to § 42–35–8, (3) intra-agency memoranda, or (4) an order."

thorized to determine contested cases. A "contested case" is "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." Section 42–35–1(c). For an administrative proceeding to qualify as a contested case, "a hearing must be required by law." *Property Advisory Group, Inc. v. Rylant,* 636 A.2d 317, 318 (R.I.1994). However, this mandate need not be explicitly provided for by statute. *Colonial Hilton Inns of New England, Inc. v. Rego,* 109 R.I. 259, 263, 284 A.2d 69, 71 (1971) (Although a hearing was not explicitly required by statute, the proceeding was, nevertheless, a contested case because the applicant for a permit to construct a wharf or bulkhead on the shore of Narragansett Bay was a "specific party" whose "rights, duties, or privileges" were to be determined by the administrative agency.). Whether or not plaintiff was entitled to a hearing before his salary was reduced, the Pay Plan Board is not an agency within the purview of the APA, because it is not authorized to determine the "legal rights, duties, or privileges of a specific party." Section 42–35–1(a).

■ After careful review of the record, we conclude that the trial justice erred in holding that the APA governed review of the Pay Plan Board's decision to reduce plaintiff's pay grade and that plaintiff's failure to comply with § 42–35–15(b) was a bar to judicial review. Therefore, the trial justice erred in granting summary judgment to defendants. Further, we are satisfied that plaintiff properly invoked the jurisdiction of the Superior Court pursuant to the Uniform Declaratory Judgments Act, G.L.1956 chapter 30 of title 9, and set forth an adequate claim for declaratory relief. However, the denial of plaintiff's motion for summary judgment can only be reviewed by petition for certiorari. Because plaintiff did not seek this review, that issue is not before the Court.

### Declaratory Judgment

■ The trial justice concluded and we agree that, as the PUC chairperson, plaintiff was a "director" as that term was used in § 36–4–16.4, as amended by P.L.1990, ch. 332, art. 1, § 13.[12] Section 36–4–16.4 provided, in pertinent part:

"Salaries of directors, judges, and [W]orkers' [C]ompensation judges.— (a) In the month of January of each year, the unclassified [P]ay [P]lan [B]oard will meet to determine salaries to be paid to directors of all state departments, to judges of all state courts, and to the judges of the [W]orkers' [C]ompensation [C]ourt for the following year."

" * * *

"(c) In no event will the [Pay Plan B]oard lower the salaries of existing directors, judges, and [W]orkers' [C]ompensation judges during their term of office."

In their filings with this Court, defendants contend that plaintiff is not a director of a department of state government. We reject this contention; the PUC chairperson is the head of the PUC [13]

---

**12.** Since the commencement of this action, the Legislature amended § 36–4–16.4 by P.L. 2004, ch. 595, art. 45, § 4. Section 36–4–16.4(a) only allows the Pay Plan Board "to determine salaries to be paid to directors of all state executive departments for the following year." As chairperson of the PUC, plaintiff would not qualify as a director of a state executive department.

**13.** General Laws 1956 § 42–14.3–1 provides:

"Commission established—Powers.— There shall be a public utilities commission.

and, as such, is a director of a state department.[14] For this reason, the Pay Plan Board determined his salary pursuant to § 36-4-16.4(a) and was governed by the provisions of § 36-4-16.4(c) that prohibited the Pay Plan Board from reducing plaintiff's salary during his term in office.

Although she found that plaintiff was a director for purposes of the Pay Plan Board's jurisdiction, the trial justice dismissed plaintiff's declaratory judgment action upon the erroneous conclusion that the APA governed the Superior Court's review of this dispute. We are satisfied that plaintiff was entitled to a judicial determination of his rights in an action for declaratory judgment. Without question, Malachowski has a stake in the outcome of this controversy and is aggrieved by an adverse decision of the Pay Plan Board. *See Meyer v. City of Newport*, 844 A.2d 148, 151 (R.I.2004) (Standing in a declaratory judgment action requires a plaintiff who has suffered "injury in fact" and has a stake in the outcome of the controversy that is concrete and particularized or, in other words, not conjectural or hypothetical.).

■ The Uniform Declaratory Judgments Act vests the Superior Court with the "power to declare rights, status, and other legal relations." *Bradford Associates v. Rhode Island Division of Purchases*, 772 A.2d 485, 489 (R.I.2001) (quoting § 9-30-1). "This power is broadly construed, to allow the trial justice to 'fa-cilitate the termination of controversies.'" *Id.* (quoting *Capital Properties, Inc. v. State*, 749 A.2d 1069, 1080 (R.I.1999)).

■ The issue presented by the declaratory judgment count was whether the Pay Plan Board reduced plaintiff's salary in violation of §§ 36-4-16.3 and 36-4-16.4. The trial justice correctly determined that the Pay Plan Board's ability to adjust plaintiff's salary was restricted by the provisions of § 36-4-16.4, which forbids the lowering of a director's salary during his or her term of office. Clearly, § 36-4-16.4(c) provided Malachowski with statutory immunity from a salary reduction during his term as chairperson of the PUC. Accordingly, we sustain his appeal and remand the case to the Superior Court with directions to consider Malachowski's Rule 56 motion for summary judgment or to proceed to trial.

### Appeal to the Personnel Appeal Board

■ Initially, plaintiff appealed the decision of the Pay Plan Board to the Personnel Appeal Board (PAB); however, his complaint was dismissed by the PAB for lack of jurisdiction. The plaintiff sought judicial review of that decision through the APA. Thus, although plaintiff invoked the APA, he did so with respect to the dismissal of his PAB claim and not the Pay Plan Board's decision to reduce his salary in the first instance. The trial justice determined that the PAB was not an

---

The head of the commission shall be the chairman of the public utilities commission, who shall carry out, except as otherwise provided by this title, the provisions of chapters 1—20, inclusive, of title 39, and of all other general laws and public laws heretofore carried out by the former administrator of public utilities and carriers and division of public utilities and carriers."

**14.** General Laws 1956 § 42-6-1 provides, in pertinent part:

"Enumeration of departments.—All the administrative powers and duties heretofore vested by law in the several state departments, boards, divisions, bureaus, commissions, and other agencies shall be vested in the following departments and other agencies which are specified in this title:"
"* * *"
"(u) Public utilities commission (chapter 14.3 of this title)."

appropriate body to entertain plaintiff's claims because its jurisdiction was limited to appeals from employees aggrieved by an action of an appointing authority and plaintiff's grievance arose from an adverse decision of the Pay Plan Board. We agree with this conclusion. The plaintiff was aggrieved by a decision of the Pay Plan Board that resulted in a diminution of his salary. Section 36–4–42 provides, in part:

> "Appeal from appointing authority to appeal board.—Any state employee * * * who feels aggrieved by an action of an appointing authority resulting in a demotion, suspension, layoff, or dismissal or by any personnel action which an appointing authority might take which causes the person to believe that he or she had been discriminated against because of his or her race, sex, age, disability, or his or her political or religious beliefs, may, within thirty (30) calendar days of the mailing of the notice of that action, appeal in writing to the [P]ersonnel [A]ppeal [B]oard for a review or public hearing."

The Pay Plan Board was not plaintiff's appointing authority. Pursuant to the provisions of § 39–1–4(b), as PUC chairperson, plaintiff was appointed by the governor for a six year term, subject to the advice and consent of the Senate. We, therefore, are satisfied that plaintiff's appeal to the PAB pursuant to the terms of § 36–4–42 was not proper.[15] Consequent-

ly, the petition for certiorari is denied and the decision affirmed.

## Conclusion

For the reasons articulated herein, we sustain plaintiff's appeal and vacate the summary judgment in favor of defendants on the declaratory judgment action. We hold that the Unclassified Pay Plan Board is not an administrative agency pursuant to the Administrative Procedures Act. The plaintiff's complaint for declaratory relief was proper, and we vacate the portion of the judgment dismissing that count of plaintiff's complaint.

We also hold that the plaintiff was aggrieved by a decision of the Unclassified Pay Plan Board, not his appointing authority. The plaintiff's appeal to the Personnel Appeal Board was, therefore, properly dismissed, and we deny the petition for certiorari.

The case is remanded to the Superior Court for proceedings in accordance with this decision.

---

15. We note that § 36–3–10 provides that "The [P]ersonnel [A]ppeal [B]oard shall hear appeals: * * * (3) By any person who holds the belief that he or she has been discriminated against because of his or her race, sex, age, disability, or his or her political or religious beliefs in any personnel action."

However, plaintiff failed to invoke this provision in his Superior Court complaint or before this Court but rested his appeal on his contention that § 36–4–42 permitted an appeal to the PAB. Accordingly, we need not address whether the provisions of § 36–3–10(3) are applicable to the facts of this case. See Lynch v. Gontarz, 120 R.I. 149, 154, 386 A.2d 184, 187 (1978) ("[I]f a suspended or dismissed unclassified employee alleges that he or she was discriminated against because of race, sex, age, physical handicap or political or religious beliefs, the employee is entitled to have that decision reviewed by the [P]ersonnel [A]ppeal [B]oard.").