STATE

v.

Ryan GREENBERG.

State

v.

Harold Chartier et al.

Harold Chartier et al.

v.

State.

Nos. 2008–36–C.A., 2008–6–M.P., 2008–38–M.P., 2007–371–M.P.

Supreme Court of Rhode Island.

July 10, 2008.

Aaron Weisman, Esq., Providence, for State.

William DiMitri, Esq., for Ryan Greenberg.

Barbara Hurst, Esq., Providence, for Harold Chartier et al.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on May 13, 2008, on appeal, as well as on a petition for writ of certiorari, filed by the State of Rhode Island (state), and on a cross-petition for certiorari filed by the defendant, Ryan Greenberg (Greenberg),[1] and on certiorari from the District Court in the cases of *Chartier v. State* and *State v. Chartier*, in which the state and Harold Chartier (Chartier) sought review of a District Court order that purportedly transferred to the Family Court all pending misdemeanor complaints that were filed against juveniles from July 1, 2007 through November 8, 2007.[2]

Both Greenberg and the state seek review of a Superior Court decision and order that directed the indictment against Greenberg, charging him with murder in the second degree, be held in abeyance pending a waiver of jurisdiction hearing in Family Court.[3] Both Greenberg and Chartier (collectively defendants) were seventeen-years-old at the time of the alleged offenses; they are among numerous juveniles who have been referred to as "gap kids," based on their status as minors who initially were charged with criminal offenses that would have been cognizable in Family Court as wayward or delinquent offenses if they had been filed before July 1, 2007, or after November 8, 2007. Ryan Greenberg was charged by way of grand jury indictment, with murder in the second degree as well as with additional felony and misdemeanor offenses, and Harold Chartier was charged in District Court with simple assault. These cases were consolidated for decision by this Court.

For the reasons stated in this opinion, we affirm in part and vacate in part. We

---

1. This case was consolidated in the Superior Court with *State v. Doe*, No.2008–36–C.A.; however, the order of consolidation was thereafter vacated by this Court and an order issued directing the parties to show cause why that appeal should not summarily be dismissed because it fails to present an actual case or controversy. Accordingly, our decision today relates to defendants Greenberg and Chartier.

2. These unnamed individuals are not properly before this Court. According to the District Court record and transcript from the District Court, the Public Defender filed "a list of names" with the District Court, which list, he stated, "may be not accurate, uh incomplete at this point in time[;]" but he added that his office "can clarify the names and the pendency of those actions later on." We do not deem these people to be properly before this Court.

3. In his decision, the Superior Court trial justice also declared that his decision "shall apply to all cases concerning [S]uperior [C]ourt jurisdiction over defendants aged seventeen during the time period between the effective dates of the July and November amendments to G.L.1956 § 14–1–6." We reject this portion of his decision and decline to address the status of any defendant who is not appropriately before the Court.

affirm that portion of the Superior Court decision and order that directed the indictment against Greenberg be held in abeyance pending a hearing in the Family Court and a decision by a justice of that court deciding whether the Family Court will waive its jurisdiction over him. We affirm that part of the District Court decision and order directing the misdemeanor case of Chartier be transferred to the Family Court and vacate that portion of the decision and order declaring that the District Court will entertain motions to transfer to the Family Court any case in which a final judgment has entered. We remand these cases to the Superior Court and District Court for further proceedings in accordance with this opinion.

## Facts and Travel

These consolidated cases involve seventeen-year-old children who were charged with committing criminal offenses between July 1, 2007, and November 8, 2007. The genesis of this saga is an amendment to G.L.1956 § 14–1–6 [4] that became effective

---

**4.** General Laws 1956 § 14–1–6 was amended by Article 22 of House Bill 2007–H 5300, Substitute A, as amended, which was entitled "An Act Making Appropriations For the Support of the State for the Fiscal Year Ending June 30, 2008" (Budget Bill). The Budget Bill was vetoed by the Governor on June 21, 2007, but the Governor did not specifically comment on the provisions affecting § 14–1–6 in his veto statement. The House of Representatives overrode the veto and the Senate sustained the action of the House on June 21, 2007. The Budget Bill, therefore, became effective notwithstanding the Governor's veto on June 21, 2007, as Public Laws 2007, ch. 73. Public Laws 2007, ch. 73, art. 22, § 1 amended § 14–1–6 as follows:

"*14–1–6. Retention of jurisdiction.*—(a) When the court shall have obtained jurisdiction over any child prior to the child's ~~eighteenth~~ *having attained the age of seventeen years* ~~birthday~~ by the filing of a petition alleging that the child *is wayward or delinquent* ~~comes within the jurisdiction of the court~~ pursuant to § 14–1–5, the child shall, except as specifically provided in this chapter, continue under the jurisdiction of the court until he or she becomes ~~twenty-one (21)~~ *nineteen (19)* years of age, unless discharged prior to turning *nineteen (19)*.

"*When the court shall have obtained jurisdiction over any child prior to the child's eighteenth birthday by the filing of a petition alleging that the child is dependent, neglected and abused pursuant to § 14–1–5 and 40–11–7, the child shall, except as specifically provided in this chapter, continue under the jurisdiction of the court until he or she becomes eighteen (18) years of age; provided, that prior to an order of discharge or emancipation being entered, the court shall re-*quire the department of children, youth, and families to provide a description of the transition services afforded the child in placement or a detailed explanation as to the reason those services were not offered; *provided further that any youth who comes within the jurisdiction of the court by the filing of a wayward or delinquent petition based upon an offense which was committed prior to July 1,2007, including youth who are adjudicated and committed to the Rhode Island Training School and who are placed in a temporary community placement as authorized by the family court, may continue under the jurisdiction of the court until he or she turns twenty one (21) years of age.*

"~~(b) In any case where the court shall not have acquired jurisdiction over any person prior to the person's eighteenth birthday by the filing of a petition alleging that the person had committed an offense, but a petition alleging that the person had committed an offense which would be punishable as a felony if committed by an adult has been filed before that person attains the age of twenty-one (21) years of age, that person shall, except as specifically provided in this chapter, be subject to the jurisdiction of the court until he or she becomes twenty-one (21) years of age, unless discharged prior to turning twenty-one (21).~~

"~~(e)~~ *(b)* In any case where the court shall not have acquired jurisdiction over any person prior to the person's attaining the age of* seventeen years* ~~twenty-first birthday~~ by the filing of a petition alleging that the person had committed an offense prior to the person's *eighteenth* attaining the age of seventeen years* ~~birthday~~ which would be punishable as a felony if committed by an adult, that person shall be referred to the court

July 1, 2007 (July Amendment)[5] and purported to divest the Family Court of jurisdiction over offenses alleged to have been committed by these young people. It was short-lived. The motivation behind the amendment was fiscal—to save money by conferring jurisdiction on the Superior Court or District Court over seventeen-year-olds who were accused of acts that would be considered felony or misdemeanor offenses if committed by an adult. Under the July Amendment, a seventeen-year-old who was convicted of a felony would face incarceration in the Adult Correctional Institutions instead of the Rhode Island Training School. The record is devoid of any legislative findings that this amendment constituted sound social policy, that it was in the best interests of the juvenile offenders to whom it would apply, or that it was a prudent fiscal measure.

Almost immediately, the Senate moved to undo the amendment and avoid the potential social cost to the state's seventeen-year-olds by passing Senate Bill 2007–S 1141, an act that restored jurisdiction over seventeen-year-old offenders to the Family Court. However, the House of Representatives recessed before it could take up the Senate's measure. It was not until October 30, 2007, that the House enacted a different act that also was passed by the Senate and sent to the Governor.[6] The act became law without the Governor's signature on November 8, 2007 (November Amendment).[7] This en-

which would have had jurisdiction over the offense if it had been committed by an adult. The court shall have jurisdiction to try that person for the offense committed prior to *the person attaining the age of seventeen years* ~~his or her eighteenth birthday~~ and, upon conviction, may impose a sentence not exceeding the maximum penalty provided for the conviction of that offense.

"*(c) Any person who has attained the age of seventeen years or older who commits an offense which would constitute a felony or a misdemeanor if committed by an adult prior to his or her eighteenth birthday, that person shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult. The court shall have jurisdiction to try that person for the offense committed prior to his or her eighteenth birthday and, upon conviction, may impose a sentence not exceeding the maximum penalty provided for the conviction of that offense.*

"(d) In any case where the court has certified and adjudicated a child in accordance with the provisions of §§ 14–1–7.2 and 14–1–7.3, the jurisdiction of the court shall encompass the power and authority to sentence the child to a period in excess of the age of *nineteen (19)* ~~twenty-one (21)~~ years. However, in no case shall the sentence be in excess of the maximum penalty provided by statute for the conviction of the offense.

"(e) Nothing in this section shall be construed to affect the jurisdiction of other courts over offenses committed by any person after he or she reaches the age of nineteen (19) years."

5. Although not a model of clarity, the Budget Bill seems to have different effective dates for each article. Some articles appear to have become effective upon passage, which was before the end of the previous fiscal year. According to its terms, Article 22 became effective upon passage, which was June 21, 2007, when the General Assembly voted to override the Governor's veto. Notwithstanding, we shall refer to this act as the July Amendment. Further, it is apparent that all parties operated under the belief that it was effective July 1, 2007.

6. This act also purported to amend the manner in which court files would be maintained in cases that were adjudicated during the life of the July amendment. *See* G.L.1956 § 14–1–6.1. We express concern about the validity of any legislation that purports to affect the judgments of our courts. *See infra*, D.

7. Senate Bill 2007–S 1141, Substitute B, became Public Laws 2007, ch. 532, which states:
 "It is enacted by the General Assembly as follows:
 "Section 1. Section 14–1–6 of Chapter 14–1 entitled 'Proceedings in Family Court' is hereby amended to read as follows:

"*14–1–6. Retention of jurisdiction.*—(a) When the court shall have obtained jurisdiction over any child prior to the child having attained the age of ~~seventeen~~ *eighteen (18)* by the filing of a petition alleging that the child is wayward or delinquent pursuant to § 14–1–5, the child shall, except as specifically provided in this chapter, continue under the jurisdiction of the court until he or she becomes nineteen (19) years of age, unless discharged prior to turning nineteen (19). When the court shall have obtained jurisdiction over any child prior to the child's eighteenth birthday by the filing of a petition alleging that the child is dependent, neglected and abused pursuant to § 14–1–5 and 40–11–7, the child shall, except as specifically provided in this chapter, continue under the jurisdiction of the court until he or she becomes eighteen (18) years of age; provided, that prior to an order of discharge or emancipation being entered, the court shall require the department of children, youth, and families to provide a description of the transition services afforded the child in placement or a detailed explanation as to the reason those services were not offered; provided further that any youth who comes within the jurisdiction of the court by the filing of a wayward or delinquent petition based upon an offense which was committed prior to July 1, 2007, including youth who are adjudicated and committed to the Rhode Island Training School and who are placed in a temporary community placement as authorized by the family court, may continue under the jurisdiction of the court until he or she turns twenty one (21) years of age.

"*(b) In any case where the court shall not have acquired jurisdiction over any person prior to the person's eighteenth birthday by the filing of a petition alleging that the person had committed an offense, but a petition alleging that the person had committed an offense which would be punishable as a felony if committed by an adult has been filed before that person attains the age of nineteen (19) years of age, that person shall, except as specifically provided in this chapter, be subject to the jurisdiction of the court until he or she becomes nineteen (19) years of age, unless discharged prior to turning nineteen (19).*

"~~(b)~~ *(c)* In any case where the court shall not have acquired jurisdiction over any person prior to the person attaining the age of ~~seventeen~~ *nineteen (19)* years by the filing of a petition alleging that the person had committed an offense prior to the person attaining the age of ~~seventeen~~ *eighteen (18)* years which would be punishable as a felony if committed by an adult, that person shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult. The court shall have jurisdiction to try that person for the offense committed prior to the person attaining the age of ~~seventeen~~ *eighteen (18)* years and, upon conviction, may impose a sentence not exceeding the maximum penalty provided for the conviction of that offense.

"~~(c) Any person who has attained the age of seventeen years or older who commits an offense which would constitute a felony or a misdemeanor if committed by an adult prior to his or her eighteenth birthday, that person shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult. The court shall have jurisdiction to try that person for the offense committed prior to his or her eighteenth birthday and, upon conviction, may impose a sentence not exceeding the maximum penalty provided for the conviction of that offense.~~

"(d) In any case where the court has certified and adjudicated a child in accordance with the provisions of §§ 14–1–7.2 and 14–1–7.3, the jurisdiction of the court shall encompass the power and authority to sentence the child to a period in excess of the age of nineteen (19) years. However, in no case shall the sentence be in excess of the maximum penalty provided by statute for the conviction of the offense.

"(e) Nothing in this section shall be construed to affect the jurisdiction of other courts over offenses committed by any person after he or she reaches the age of nineteen (19) years.

"**SECTION 2.** Chapter 14–1 of the General Laws entitled 'Proceedings In Family Court' is hereby amended by adding thereto the following sections:

"*14–1–6.1. Records.*—*(a) In any case where a court shall have obtained jurisdiction of a juvenile having attained the age of seventeen (17) years pursuant to 2007 P.L. 73, Article 22, section 1:*

"*(i) all police records relating to the arrest, detention, apprehension and disposition of the juvenile and all records of identification maintained pursuant to chapter 12–1 of the general laws shall be treated as family court records in accordance with sections*

actment did little to clarify the resulting jurisdictional quagmire.

The cases before us concern juveniles who were arrested and charged with criminal offenses between July 1, 2007, and November 8, 2007—that gap period when seventeen-year-olds were treated as adult offenders. According to the parties, numerous juveniles were arrested and prosecuted in the District Court for misdemeanors, and some, but not all, of those cases resulted in final judgments before the effective date of the November Amendment. Although many juveniles apparently were arrested for felony offenses during this interregnum, the only indictment before us at present is that of Greenberg, who was arraigned in Superior Court after the statute was amended in November. However, we are aware that some juveniles may have been arraigned on indictments or criminal informations before the November Amendment, while others were not.

Both amendments were challenged in the Superior and District Courts on constitutional grounds. A Superior Court trial justice found that the legislation did not violate the state or federal constitutions, but he also ruled that the Family Court retained original jurisdiction over Greenberg and similarly situated juveniles. The trial justice determined that the July Amendment did not modify the jurisdictional prerequisites set forth in title 14 of the General Laws, entitled "Delinquent and Dependent Children." He concluded that the state was required to file a petition in the Family Court seeking a waiver of jurisdiction in order for Greenberg to be "referred to the court which would have had jurisdiction over the offense if it had been committed by an adult." *See* July Amendment (P.L.2007, ch. 73, art. 22, § 1). The trial justice also ordered that any criminal informations and complaints that were pending in the Superior Court be dismissed, but any indictments, including the indictment against Ryan Greenberg, were to be held in abeyance pending waiver hearings in the Family Court.

In the *Chartier* case, on the other hand, a District Court trial judge ordered that all misdemeanor complaints filed with respect to any juvenile during the relevant period and pending in the District Court be transferred to the Family Court. Additionally, with respect to any adjudicated misdemeanor case in which the sentence was not completed, the District Court judge declared that he would entertain and grant, on an individual basis, motions to transfer those cases to the Family Court. The trial judge appeared to base his decision on § 14–1–28, which requires the immediate transfer to the Family Court of any case in which it is ascertained that the

14–1–64 and 38–2–2 of the general laws; provided, however, that no person and no department, agency or any other instrumentality of the state or of any subdivision thereof shall be held liable or otherwise legally accountable for having disclosed or disseminated any such records in reasonable reliance upon the law in effect between July 1, 2007, and the effective date of this act [November 8, 2007]; and provided further that nothing in this section shall be deemed to prohibit the use of witness statements and other police records in the course of judicial proceedings initiated prior to theeffective [sic] date of this act; and

"(ii) all court records of such proceedings shall be sealed upon final disposition of the case in the event of a no information, dismissal or not guilty finding or upon the completion of any sentence, probation and/or parole imposed therein.

"*14–1–6.2. Sentencing.*—In any case in which the court shall have jurisdiction of a juvenile pursuant to this chapter, the court shall consider placing the juvenile in the least restrictive appropriate facility or program.

"**SECTION 3.** This act shall take effect upon passage."

accused was under the age of eighteen at the time of the alleged offense.

Moreover, without any citations to authority, the trial judge in the District Court also grounded his decision on the disparate treatment of juvenile offenders that was based solely on the date of the offense. The District Court judge found that different prosecutions and punishments for juveniles based on when they were arrested—either before or after the November Amendment—created an impermissible classification.

This Court is confronted with the task of developing a framework to deal with these issues.

## Standard of Review

 Our review of a case on certiorari is limited to an examination of "the record to determine if an error of law has been committed." *Gaumond v. Trinity Repertory Co.*, 909 A.2d 512, 516 (R.I.2006) (quoting *City of Providence v. S & J 351, Inc.*, 693 A.2d 665, 667 (R.I.1997)). "We do not weigh the evidence on certiorari, but only conduct our review to examine questions of law raised in the petition." *Malachowski v. State*, 877 A.2d 649, 653 (R.I.2005) (quoting *Jeff Anthony Properties v. Zoning Board of Review of North Providence*, 853 A.2d 1226, 1229 (R.I. 2004)).

 "When reviewing an appeal based on an alleged error of law, this Court employs a *de novo* review to determine whether the trial justice committed legal error." *State v. Jennings*, 944 A.2d 171, 173 (R.I.2008) (citing *Children's Friend & Service v. St. Paul Fire Marine Insurance Co.*, 893 A.2d 222, 229 (R.I.2006)).

 This Court also reviews questions of statutory interpretation *de novo*. *Henderson v. Henderson*, 818 A.2d 669, 673 (R.I.2003) (citing *Pier House Inn, Inc.*

*v. 421 Corp.*, 812 A.2d 799, 804 (R.I.2002)). "The construction of legislative enactments is a matter reserved for the courts, * * * and, as final arbiter on questions of construction, it is this court's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987) (citing *Fruit Growers Express Co. v. Norberg*, 471 A.2d 628, 630 (R.I.1984) and *Gryguc v. Bendick*, 510 A.2d 937, 939 (R.I.1986)). In accomplishing this task, we examine "the language, nature, and object of the statute[,]" to glean the intent of the Legislature. *State v. Pelz*, 765 A.2d 824, 829–30 (R.I.2001) (quoting *Howard Union of Teachers v. State*, 478 A.2d 563, 565 (R.I. 1984)). When confronted with an issue of statutory construction, we "look to the plain and ordinary meaning of the statutory language." *Henderson*, 818 A.2d at 673 (citing *Fleet National Bank v. Clark*, 714 A.2d 1172, 1177 (R.I.1998)). " 'If the language is clear on its face, then the plain meaning of the statute must be given effect' and this Court should not look elsewhere to discern the legislative intent." *Id.* (quoting *Fleet National Bank*, 714 A.2d at 1177). Moreover, "when we examine an unambiguous statute, 'there is no room for statutory construction and we must apply the statute as written.' " *State v. DiCicco*, 707 A.2d 251, 253 (R.I.1998) (quoting *In re Denisewich*, 643 A.2d 1194, 1197 (R.I. 1994)).

## Analysis

We begin by noting that only two defendants, Greenberg and Chartier, are appropriately before the Supreme Court in these consolidated cases. Although the orders entered in the Superior Court and the District Court purport to encompass a class of defendants who were arrested and

prosecuted during the interregnum between the July Amendment and the November Amendment, those people are not named in the papers in this case and are not properly before the Supreme Court. We have no information about who they are, whether they are represented by counsel, whether they have warrants outstanding for their arrest, or whether they even are aware of this appeal. Consequently, we decline to adjudicate matters involving people who are unknown to the Supreme Court. *See Ensey v. Culhane,* 727 A.2d 687, 690 (R.I.1999) (determining that, although the complaint referred to a number of unnamed state police officers who were characterized as John Does, they are not considered parties to the case unless they "are named and served with process within a reasonable time after their identities become known").

Nonetheless, we are cognizant of the fact that many juveniles fall within the parameters of the July and November Amendments and that our holding will affect their cases. We therefore shall address the types of cases—felonies and misdemeanors—that are pending or have been adjudicated, and will endeavor to issue a mandate that is comprehensive and clear and that may be applied to those cases as they are reached in the Superior and District Courts.

We direct that counsel for the state and the Public Defender shall attempt to resolve these cases by stipulation and agree on those cases that may be adjudicated in the Family Court. With respect to any case in which the Attorney General files a motion pursuant to chapter 1 of title 14, a waiver hearing shall be scheduled in the Family Court as soon as practicable. The time period for filing such a motion shall not begin to run unless and until the juvenile is presented in the Family Court.

## The Juvenile Justice System in Rhode Island

### A

### Family Court

■ The Family Court is a court of limited jurisdiction, *State v. Day,* 911 A.2d 1042, 1049 (R.I.2006); it was created by statute and its authority is restricted to those powers that are conferred by the Legislature. *State v. Mastracchio,* 546 A.2d 165, 168 (R.I.1988). However, the Family Court's authority over the welfare of children is among the court's core functions, and the Supreme Court consistently, and jealously, has guarded the Family Court's mission as a sanctuary and critical refuge for the state's troubled children. The Family Court's adjudication of a case involving a child accused of conduct that would be criminal, but for the child's age, has wide-ranging effects on the welfare of the child and the well-being of the community.

Although this Court consistently has recognized that juveniles have no constitutional right to avoid the adult penal system, we carefully have reviewed any challenge to the Family Court's jurisdictional reach over children. *Mastracchio,* 546 A.2d at 169. An accused child who comes before the Family Court has the benefit of the ameliorative mission of that court, rather than face the adult criminal justice system, with its dual aim of retribution and deterrence. *Knott v. Langlois,* 102 R.I. 517, 520–21, 231 A.2d 767, 768 (1967) (citing Comment, *Criminal Offenders In The Juvenile Court: More Brickbats And Another Proposal,* 114 U. Pa. L.Rev. 1171, 1172 (1966)). When an alleged minor offender is adjudicated in the Family Court rather than the adult system, the case is approached with "the possibility of detention in a juvenile institution for rehabilitative rather than retributive purposes for a term which cannot extend beyond his [or

her] [19th] birthday[,]" as opposed to incarceration "in an adult penal institution for a term which depending on the crime may be for as much as life." *Knott*, 102 R.I. at 521, 231 A.2d at 768–69; *see also* § 14–1–6.

Because of the Family Court's objective of rehabilitation and treatment for troubled youth, this Court has acknowledged the limitations and "critical importance of a waiver of jurisdiction by the Family Court." *In re Joseph T.*, 575 A.2d 985, 986 (R.I.1990) (citing *Kent v. United States*, 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)). The Family Court is the last barrier separating the child from the adult criminal justice system, and a decision to waive jurisdiction over a juvenile is not to be undertaken lightly. Waiver of jurisdiction has long-lasting consequences: the child no longer will remain at the Rhode Island Training School, and he or she may face imprisonment in a high-security facility, alongside the state's most hardened felons. For these reasons, the Family Court's waiver of jurisdiction over a child accused of conduct that would be criminal if committed by an adult should be critically examined and cautiously decided.

▮ Title 14 of the General Laws is a legislative framework—constructed incrementally and not uniformly—that is designed to deal with children who are accused of acts that would be criminal if committed by an adult. Section 14–1–40(a) provides that a juvenile may not "be charged with or convicted of a crime in any court, except as provided in this chapter." This Court has recognized that "the Family Court has exclusive personal jurisdiction over juveniles appearing before it on delinquency petitions," and although the Family Court may declare that a child's behavior is delinquent, it has no authority to adjudicate that child as a felon. *Day*, 911 A.2d

at 1049. Only after a judicial determination that a waiver of Family Court jurisdiction is appropriate is that court divested of jurisdiction over the child, who then is subject to criminal prosecution. *Id.*

▮ After careful review of the record in the *Greenberg* case and examination of settled law with respect to delinquent children, we are satisfied that, whatever the crime charged, the prosecution of a child under the age of eighteen is controlled by title 14 of the General Laws and jurisdiction rests, in the first instance, in the Family Court, subject to a waiver of jurisdiction over the child in accordance with the statute. The Superior Court is a court of general jurisdiction authorized to hear criminal cases, but it lacks personal jurisdiction over juveniles accused of criminal conduct unless and until there has been a waiver of jurisdiction over the accused by the Family Court. *Day*, 911 A.2d at 1049.

▮ Waiver of jurisdiction over a child by the Family Court is a decision that is made on a case-by-case basis to protect the best interest of the juvenile and the public. *See Mastracchio*, 546 A.2d at 169 & n. 5. In crafting a mechanism to balance these sometimes competing interests, we are mindful that "[t]he Legislature is 'presumed to know the state of existing law when it enacts or amends a statute.'" *State v. DelBonis*, 862 A.2d 760, 768–69 (R.I.2004) (quoting *Simeone v. Charron*, 762 A.2d 442, 446 (R.I.2000)). The underlying statutory scheme at issue in this case confers jurisdiction on the Family Court over seventeen-year-olds who are accused of offenses that would be criminal if committed by adults. We are of the opinion that the Family Court's original jurisdiction over juveniles who are accused of felony offenses was unchanged by the July Amendment; even after the passage of the amendment, a juvenile

could be prosecuted in Superior Court, but only after the Family Court conducted a waiver hearing and waived jurisdiction in accordance with the provisions of chapter 1 of title 14. This is so because the amendment did not divest the Family Court of its original and exclusive personal jurisdiction over juvenile offenders.

Pursuant to the July Amendment, "*[a]ny person* who has attained the age of seventeen years or older" and is alleged to have committed a felony offense "*shall be referred* to the court which would have had jurisdiction over the offense if it had been committed by an adult." Section 14–1–6(c), as amended by P.L.2007, ch. 73, art. 22, § 1. (Emphases added.) The state argues that, because the statute required the Family Court to refer the juvenile to adult court, a waiver hearing was not a prerequisite condition. According to the state, the General Assembly did not "condition the jurisdictional change upon [a probable-cause] hearing in Family Court." This is so, the state contends, because the amendment to § 14–1–6(c) "plainly does not say that the Family Court may only refer an offender to the appropriate adult court" upon a finding of probable cause by a Family Court justice, and thus "there is no basis to read such a requirement into the statute." This argument is without merit. Section 14–1–6 is completely silent with respect to how the Family Court may waive jurisdiction over a child. The conditions prerequisite to a waiver of jurisdic-

tion and the mandate for a probable-cause hearing are set forth in §§ 14–1–7 and 14–1–7.1.

In his decision, the Superior Court justice concluded that the Legislature intended to expand those instances in which the Family Court was mandated to waive its jurisdiction over juvenile offenders, but that waiver of jurisdiction must be in accordance with chapter 1 of title 14. We agree with this conclusion and are satisfied that the Family Court was not divested of jurisdiction over seventeen-year-olds who were accused of conduct that would be criminal if committed by an adult. We hold that juveniles, including defendants before us, should have been presented in the Family Court in the first instance. A juvenile may be referred to adult court only after a probable-cause hearing and a finding by the hearing justice that waiver of jurisdiction is appropriate and consistent with the statute.

**B**

**Waiver of Jurisdiction**

The Legislature has declared that the Family Court has exclusive jurisdiction of proceedings involving delinquent, wayward, dependent, neglected, or mentally disabled children, subject to a waiver by the Family Court of jurisdiction over a child charged with certain delinquent offenses. Section 14–1–5.[8] A juvenile offender, after a hearing, may be subject to waiver of jurisdiction by the Family Court

---

**8.** Section 14–1–5 sets forth the exclusive jurisdiction of the Family Court by providing:

"The court shall, as set forth in this chapter, have exclusive original jurisdiction in proceedings:

"(1) Concerning any child residing or being within the state who is: (i) delinquent; (ii) wayward; (iii) dependent; (iv) neglected; or (v) mentally disabled, except that any person aged seventeen (17) years of age or older who is charged with a delinquent offense involving murder, first degree sexu-

al assault, or assault with intent to commit murder shall not be subject to the jurisdiction of the family court if, after a hearing, the family court determines that probable cause exists to believe that the offense charged has been committed and that the person charged has committed the offense. The family court shall conduct a hearing within ten (10) days of the arraignment on the charge(s), unless the time for the hearing is extended by the court for good cause shown;

in several circumstances. The Attorney General, by motion in the Family Court, may seek a waiver of jurisdiction over a child based on the age of the child and the gravity of the alleged offense. Section 14–1–7.[9] If the child is accused of an offense that is punishable by life imprisonment if committed by an adult, or is sixteen years of age or older and is charged with an offense that would constitute a felony if committed by an adult, §§ 14–1–7(a) and 14–1–7(b) provide that the child shall "be brought before the [Family] [C]ourt and the court shall conduct a waiver hearing pursuant to § 14–1–7.1."

Significantly, § 14–1–7.1(c) provides that a waiver of jurisdiction over a child constitutes a waiver for the offense upon which the Attorney General's motion was based and "for all pending and subsequent offenses of whatever nature, and the child shall be referred to the court which would have had jurisdiction if the offense had been committed by an adult." However, § 14–1–7.1(c) also provides that "[i]n the event that the child is acquitted of the offense for which the waiver has been sought, the waiver shall be vacated." This

provision is consistent with the ameliorative goals of the state's juvenile justice system and reflects a policy determination that, in the end, and in the absence of a subsequent determination of guilt, a child should remain subject to the jurisdiction of the Family Court.

▪ Lastly, there is no statute or rule of court that anticipates the Family Court's waiver of jurisdiction over a juvenile accused of conduct that would be a misdemeanor if committed by an adult. Accordingly, we affirm that portion of the District Court order that directs the transfer of Chartier's case to the Family Court.

With respect to any case that is pending in the District Court in which a juvenile was charged with a misdemeanor offense, such a case shall be transferred to the Family Court and adjudicated as a wayward petition in accordance with this opinion.

## C
### Felony Cases

▪ Turning to the case before us, we note at the outset that the Family Court

---

"(2) Concerning adoption of children;

"(3) To determine the paternity of any child alleged to have been born out of wedlock and to provide for the support and disposition of that child in case that child or its mother has residence within the state;

"(4) Relating to child marriages, as prescribed by § 15–2–11; and

"(5) Referred to the court in accordance with the provisions of § 14–1–28."

9. Section 14–1–7, "**Waiver of jurisdiction or certification hearing**," provides:

"(a) If any child is charged with an offense which would be punishable by life imprisonment if committed by an adult, that child, upon motion of the attorney general, shall be brought before the court and the court shall conduct a waiver hearing pursuant to § 14–1–7.1.

"(b) Any child sixteen (16) years of age or older who is charged with an offense which

would constitute a felony if committed by an adult shall, upon motion of the attorney general, be brought before the court and the court shall conduct a waiver hearing pursuant to § 14–1–7.1.

"(c) Any child who is charged with an offense which would constitute a felony if committed by an adult shall, upon motion of the attorney general, be brought before the court and the court shall conduct a certification hearing pursuant to § 14–1–7.2.

"(d) Any motion for waiver or certification shall be filed with the court within thirty (30) days of arraignment.

"(e) In any hearing on a motion for waiver pursuant to § 14–1–7.1, the court may consider whether or not the child may be alternatively certified pursuant to § 14–1–7.2."

did not conduct a waiver hearing for Greenberg and that the indictment was not filed in Superior Court before the November Amendment became law. The failure of the state to secure an indictment of Greenberg before the November Amendment controls the result in that case, as set forth in our recent holding in *State v. Jennings,* 944 A.2d 171 (R.I.2008).

In *Jennings,* we were faced with the question of whether the Superior Court or the Family Court had jurisdiction over a violation of G.L.1956 § 11–9–5.3, entitled "Brendan's Law," when a jurisdictional statute was amended, subsequent to Jennings's arrest, but before the Attorney General filed a criminal information in the Family Court. *Jennings,* 944 A.2d at 172–73. After the statute was amended and the Family Court was divested of jurisdiction, Jennings's case was removed to the Superior Court, and the state appealed, arguing that the Family Court retained jurisdiction over the case because it was pending in that tribunal when the statute was amended. *Id.* at 175. However, the state failed to file a criminal information in the Family Court before the effective date of the amendment, and we declared that the case was not pending in the Family Court and jurisdiction was vested in the Superior Court. *Id.*

It is noteworthy that our resolution in *Jennings* did not turn on retroactive versus prospective application of the legislative enactment. *Jennings,* 944 A.2d at 174. Rather, we held that "a prosecution for a crime must be preceded by a formal accusation." *Id.* (quoting *State v. Souza,* 456 A.2d 775, 779 (R.I.1983)). With respect to a felony crime, the accusation "must be by way of indictment by a grand jury or by information of the Attorney General." *Id.*

We concluded that "[t]he operative filing for the commencement of this criminal prosecution is the charge by information." *Jennings,* 944 A.2d at 175. The fact that a felony complaint, as opposed to an indictment or information, was filed in the Family Court was irrelevant because the complaint constituted "nothing more than an initial bail-setting instrument." *Id.; see also State v. Machado,* 944 A.2d 865, 866 (R.I.2008) (mem.) (relying on *Jennings* in determining that the prosecution of the case was not pending as of the jurisdictional amendment "[b]ecause a felony prosecution commences only after a charge by information").

Because Greenberg is the only defendant charged with a felony who is properly before this Court, our review should end and the indictment should be held in abeyance pending a waiver hearing in the Family Court. However, it is undisputed that numerous seventeen-year-old offenders were arrested and have been prosecuted in the Superior Court pursuant to the July Amendment. Although these individuals are not properly before us, their entitlement to relief from the consequences of this jurisdictional fracture is compelling. Because we are of the opinion that the Family Court was not divested of jurisdiction over seventeen-year-olds, any juvenile accused of an offense that would constitute a felony if committed by an adult is entitled to a hearing in Family Court and a judicial determination of whether a waiver of that court's jurisdiction over the child is appropriate.[10]

We pause to note that there is no legal distinction between an indictment and criminal information; each is embodied in the state constitution, which provides that a defendant in a noncapital case may be

---

10. Our decision today also avoids the inconceivable situation where a juvenile is being prosecuted in the Superior Court and at the same time is facing prosecution in the Family Court on a different charge—a circumstance that Greenberg experienced.

charged by indictment or criminal information signed by the Attorney General or by his or her designated assistant. R.I. Const. art. 1, sec. 7 (providing that "no person shall be held to answer for any other felony unless on presentment or indictment by a grand jury or on information in writing signed by the [A]ttorney-[G]eneral or one of the [A]ttorney-[G]eneral's designated assistants * * * "). Either method constitutes "the starting point of our whole system of adversary criminal justice." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). This Court has held that any criminal prosecution begins with a formal charge and that a "formal accusation of a felony [offense] must be by way of indictment by a grand jury or by information of the Attorney General." *Jennings*, 944 A.2d at 174 (quoting *Souza*, 456 A.2d at 779). Because noncapital felony crimes may be prosecuted by grand jury indictment or criminal information, the law governing a trial justice's decision on a motion to dismiss for lack of jurisdiction—whether an indictment or criminal information—is the same. In the context of this case, dismissal is not the appropriate remedy.

■ Before this Court, defendants argue that, under the common-law rule of abatement, when a penal statute is repealed without a savings clause, "all criminal proceedings instituted thereunder abate." We need not address this contention, however, because we are not confronted with an amendment to a penal statute. Rather, the legislation under review relates to jurisdictional changes over substantive criminal offenses, but not the offenses themselves. The law is well settled; when a trial justice determines that original subject-matter jurisdiction over an offense resides in another court within our unified court system, he or she shall order the case transferred to that court.

In *State v. Boucher*, 468 A.2d 1227, 1228 (R.I.1983), a statewide grand jury returned an indictment charging the defendants with habitual cruelty to a child, a felony offense that was cognizable in and transferred to the Family Court, as well as two misdemeanor counts which the trial justice refused to transfer to the District Court. This Court vacated the defendants' convictions and ordered that the case be transferred to the District Court. *Id.* at 1229. We concluded that, after the felony charge was transferred to the Family Court, the Superior Court no longer retained jurisdiction over the remaining misdemeanor counts because "the original subject-matter jurisdiction to try the misdemeanors remained in the District Court pursuant to the terms of [G.L.1956] § 12–3–1." *Boucher*, 468 A.2d at 1229.

Likewise, in *State v. Sickles*, 470 A.2d 220, 220 (R.I.1984), the grand jury returned an indictment charging the defendant with the misdemeanor offense of willful and malicious injury to property, and he was convicted in the Superior Court. This Court vacated the conviction and ordered the case transferred to the District Court because original jurisdiction over misdemeanor crimes resided in the District Court. *Id.* at 221. Our holding in *Boucher*, 468 A.2d at 1229, and *Sickles*, 470 A.2d at 221, concerned subject-matter jurisdiction and the requirement that the trial justice order the case be transferred to the appropriate court. Where possible, the case should not be dismissed. In *Boucher* and *Sickles*, the District Court was vested with subject-matter jurisdiction over the crimes charged, and we ordered the cases transferred to that tribunal.

We contrast these cases with our holding in *In re Edward*, 441 A.2d 543 (R.I. 1982), in which we concluded that the Family Court lacked subject-matter jurisdiction over an offense that took place on

"the day immediately preceding Edward's eighteenth birthday[,]" based on the common-law rule that "a person reaches his or her next year in age at the first moment of the day prior to the anniversary date of his or her birth." *Id.* at 543. However, we remanded the case to the Family Court with directions to dismiss the petition. *Id.* at 544. Dismissal was appropriate in that case because the Family Court wholly lacked jurisdiction over Edward and the offense with which he was charged, and there was no court to which the delinquency petition could have been transferred.

In the case before us, the Superior Court incontrovertibly has jurisdiction over felony crimes and eventually may have jurisdiction over Greenberg and other similarly situated seventeen-year-old offenders, if the Family Court elects to waive its jurisdiction over them. Therefore, we are of the opinion that our decision in *Mastracchio*, 546 A.2d at 170, should control the result in this case.

In *Mastracchio*, this Court was confronted with a Superior Court conviction for a brutal homicide that was committed when the defendant was seventeen years old but prosecuted in Superior Court after the defendant's twenty-first birthday. *Mastracchio*, 546 A.2d at 167. This Court refused to vacate the conviction; we remanded the case to the Superior Court with directions to conduct a *de novo* hearing "to determine whether [the] Family Court would have waived jurisdiction" over the defendant in the first instance. *Id.* at 170. Notably, as a court of general jurisdiction, the Superior Court was vested with jurisdiction over first-degree murder and was not divested of that jurisdiction by virtue of the defendant's age, as long as the Family Court waived its jurisdiction over him.

Accordingly, we are of the opinion that the Superior Court retains original jurisdiction over most felony crimes and those persons who are accused of committing them, and that the Superior Court may acquire jurisdiction over seventeen-year-old alleged offenders after a waiver hearing in the Family Court. Therefore, with respect to Greenberg, the next order of business is a waiver hearing in the Family Court.

### D

### Adjudicated Cases

▬▬ Lastly, we note that, in his decision, the District Court judge declared his intention to entertain and grant a motion to transfer to the Family Court any adjudicated case of a seventeen-year-old in which the sentence or probationary term has not been completed. We deem this error. Cases for which final judgments have been entered are not subject to transfer to another court unless the convictions are vacated, in accordance with the provisions of the postconviction remedy that are set forth in G.L.1956 chapter 9.1 of title 10.

▬▬ Additionally, we address the portion of the November Amendment that purports to direct the manner in which court records shall be maintained for cases in which a final judgment has entered.[11]

---

11. Section 14–1–6.1 provides:
 "(a) In any case where a court shall have obtained jurisdiction of a juvenile having attained the age of seventeen (17) years pursuant to 2007 P.L. 73, Article 22, section 1:
 "(i) All police records relating to the arrest, detention, apprehension and disposition of the juvenile and all records of identification maintained pursuant to chapter 12–1 of the general laws shall be treated as family court records in accordance with §§ 14–1–64 and 38–2–2 of the general laws; provided, however, that no person and no department, agency or any other instrumentality of the state or of any subdivision

Section 14–1–6.1(a)(ii) provides that upon a final disposition in a case that was adjudicated pursuant to the July Amendment, all court records shall be sealed, including records of any sentence, probation, or parole imposed. (2007 Spec. Supp.) The Legislature is not free to exercise this judicial power, nor may it enact legislation purporting to affect court judgments. *See Opinion of Supreme Court upon the Act to Reverse the Judgment against Dorr,* 3 R.I. 299, 311 (1854) (The Court determined that the Legislature does not have the authority to mandate what shall be written on the face of the record in a case. "[T]his course of proceeding is indispensable to the safety of parties who have a direct interest in the preservation of the records * * *."). Because these cases were not brought on behalf of any person whose case has been adjudicated, as defendants have argued, those adjudicated cases are not before us. However, the remedy of postconviction relief is available to anyone who may be aggrieved by a criminal conviction or disposition.

## Conclusion

For the reasons set forth in this opinion, we affirm in part and vacate in part.

In *State v. Greenberg,* we affirm that portion of the Superior Court decision and order that held in abeyance the indictment against the defendant, Ryan Greenberg, pending a hearing in the Family Court in accordance with the provisions of chapter 1 of title 14 of the General Laws. The papers in this case may be remanded to the Supe-

rior Court with our decision endorsed thereon. We decline to address and issue no opinion as to the remainder of the Superior Court decision and order.

In *State v. Chartier* and *Chartier v. State,* we affirm that portion of the District Court decision and order that transferred the case against the defendant, Harold Chartier, to the Family Court. We vacate that portion of the District Court decision and order that purported to address any District Court case in which judgment has been entered. The papers in this case may be remanded to the District Court with our decision endorsed thereon.

thereof shall be held liable or otherwise legally accountable for having disclosed or disseminated any such records in reasonable reliance upon the law in effect between July 1, 2007, and the effective date of this act [November 8, 2007]; and provided further that nothing in this section shall be deemed to prohibit the use of witness statements and other police records in the

course of judicial proceedings initiated prior to the effective date of this act; and

"(ii) All court records of such proceedings shall be sealed upon final disposition of the case in the event of a no information, dismissal or not guilty finding or upon the completion of any sentence, probation and/or parole imposed therein." (2007 Spec. Supp.)